## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Brian Askew
6434 Polk Cr
Glen Burnie, MD 21061

       *Plaintiff*,

   v.

Metropolitan Protective Services, Inc.
     Serve: Geraldine L. Parks
           3602 Hilary Court
           Upper Marlboro, MD 20772

and,

National Harbor Waterfront, L.C.
     Serve: The Corporation Trust, Inc.
           2405 York Road
           Suite 201
           Lutherville-Timonium, MD
           21093-2264

and,

Carolyn Blake
5001 Forbes Blvd.
Lanham, MD 20706

and,

Bill Dunston
National Harbor Waterfront
Public Safety Office
165 Waterfront Street
Oxon Hill, MD 20745

and,

Ahmad Habibi
5001 Forbes Blvd.
Lanham, MD 20706

and,

Case No.: _____

**\*JURY TRIAL DEMANDED\***

Elva Hernandez
5001 Forbes Blvd.
Lanham, MD 20706

and,

Derek Parks
5001 Forbes Blvd.
Lanham, MD 20706

*Defendants*.

## COMPLAINT AND JURY DEMAND

Comes now the Plaintiff Brian Askew, by and through the office of undersigned counsel, Charles Tucker Jr. and the law firm of Tucker Moore Law Group, LLP, and sues the above-named defendants, stating the cause as follows:

## JURISDICTION AND VENUE

1)      This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United States.

2)      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

3)      Plaintiff Mr. Brian Askew filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on or about January 17, 2019, against Defendant Metropolitan Protective Services, Inc., and was issued a Right to Sue notice on or about May 28, 2021.  *See* Exhibit A ("May 28, 2021, Right to Sue Notice for Brian Askew against Metropolitan Protective Services, Inc., Charge No. 12F-2019-00416").

4)      Plaintiff Mr. Brian Askew also filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on or about January 17, 2019, against Defendant National Harbor Waterfront, L.C., and was issued a Right to Sue notice on or about May 28, 2021.  *See* Exhibit B ("May 28, 2021, Right to Sue Notice for Brian Askew against National Harbor Waterfront, L.C., Charge No. 12F-2019-00458").

5)      This civil action was timely commenced within 90 days of May 28, 2021, and all conditions precedent for this suit have been met and/or complied with by Plaintiff Brian Askew.

## PARTIES

6)      Plaintiff Brian Askew ("Mr. Askew") is an adult resident of Anne Arundel County, Maryland.

7)      Defendant Metropolitan Protective Services, Inc. ("MPS") is a *sui juris* corporate entity organized under the laws of the state of Maryland.  At all times relevant to the occurrences complained of herein, Defendant MPS was the employer and/or principal of Defendants Carolyn Blake, Ahmad Habibi, and Elva Hernandez and is jointly and severally liable for the actions of those individual defendants on the basis of *respondeat superior* and other applicable law, including Title VII.  At all times relevant to the occurrences complained of herein, Defendant MPS was a joint employer of Plaintiff Mr. Askew, together with Defendant National Harbor Waterfront, L.C., with both employers exercising significant control of the day-to-day responsibilities of Plaintiff Mr. Askew.

8)      Defendant National Harbor Waterfront, L.C. ("National Harbor") is a *sui juris* corporate entity organized under the laws of the state of Virginia.  At all times relevant to the occurrences complained of herein, Defendant National Harbor was the employer and/or principal of Defendants Carolyn Blake, Bill Dunston, Ahmad Habibi, and Elva Hernandez and is jointly

3

and severally liable for the actions of those individual defendants on the basis of *respondeat superior* and other applicable law, including Title VII.  At all times relevant to the occurrences complained of herein, Defendant National Harbor was a joint employer of Plaintiff Mr. Askew, together with Defendant MPS, with both employers exercising significant control of the day-to-day responsibilities of Plaintiff Mr. Askew

9)      Defendant Carolyn Blake ("Blake") is an adult resident of Prince George's County, MD.  At all times relevant to the occurrences complained of herein, Defendant Blake was acting in her individual capacity and in her capacity as an employee and/or agent of Defendant MPS and Defendant National Harbor, and Defendants MPS and National Harbor are also jointly and severally liable for the actions of Defendant Blake on the basis of *respondeat superior* and other applicable law.

10)     Defendant Bill Dunston ("Dunston") is an adult resident of Prince George's County, MD.  At all times relevant to the occurrences complained of herein, Defendant Dunston was acting in his individual capacity and in his capacity as an employee and/or agent of Defendant National Harbor, and Defendant National Harbor is also jointly and severally liable for the actions of Defendant Dunston on the basis of *respondeat superior* and other applicable law.

11)     Defendant Ahmad Habibi ("Habibi") is an adult resident of Prince George's County, MD.  At all times relevant to the occurrences complained of herein, Defendant Habibi was acting in his individual capacity and in his capacity as an employee and/or agent of Defendant MPS and Defendant National Harbor, and Defendants MPS and National Harbor are also jointly and severally liable for the actions of Defendant Habibi on the basis of *respondeat superior* and other applicable law.

12)    Defendant Elva Hernandez ("Hernandez") is an adult resident of Prince George's County, MD.  At all times relevant to the occurrences complained of herein, Defendant Hernandez was acting in her individual capacity and in her capacity as an employee and/or agent of Defendant MPS and Defendant National Harbor, and Defendants MPS and National Harbor are also jointly and severally liable for the actions of Defendant Hernandez on the basis of *respondeat superior* and other applicable law.

13)    Defendant Derek Parks ("Parks") is an adult resident of Prince George's County, MD.  At all times relevant to the occurrences complained of herein, Defendant Parks was acting in his individual capacity and in his capacity as owner and/or corporate officer and/or employee and/or agent of Defendant MPS, and Defendants MPS is jointly and severally liable for the actions of Defendant Parks on the basis of *respondeat superior* and other applicable law

## FACTS UNDERLYING ALL COUNTS

14)    Plaintiff Mr. Askew was hired by Defendants MPS and National Harbor on or about September 27, 2018.  Mr. Askew was hired to the position of Security Supervisor Sergeant.  Defendant National Harbor operates the National Harbor Waterfront, located in Prince George's County, Maryland.

15)    During his tenure working for Defendant MPS, Mr. Askew, who is African American, was the only gay employee for MPS or for the Office of Public Safety of Defendant National Harbor.

16)    At all times during his employment, Mr. Askew performed his duties within and beyond the reasonable expectations of his employers.

17)    While serving as Security Supervisor Sergeant, Mr. Askew's supervisors for Defendant MPS were Defendants Blake and Habibi.

18)     While serving as Security Supervisor Sergeant, Mr. Askew's supervisor for Defendant National Harbor was Defendant Dunston.

19)     Defendants MPS and National Harbor were Mr. Askew's joint employers, with both exercising control over different aspects of Mr. Askew's day-to-day activities.  Defendant MPS provided payroll, conducted employee evaluations, and determined which site Mr. Askew would be assigned to.  Defendant National Harbor had control of Mr. Askew's work schedule and hours, wwas responsible for handling discipline and termination of employees and establishing policy for the same, making specific security assignments during larger events at the National Harbor Waterfront, and doing security reviews with staff when incidents were not handled up to standards.  Defendant National Harbor also set the policies and code of conduct which Mr. Askew was responsible for enforcing as a security sergeant.

20)     On or about October 20, 2018, Defendant Habibi, on account of Mr. Askew's race and sexual orientation, falsely and maliciously disciplined Mr. Askew for allegedly arriving two minutes late to work.  This allegation was false, and its falsity was confirmed by a witness, fellow employee for Defendants MPS and National Harbor Sergeant Thomas ("Sgt. Thomas"). Despite Sgt. Thomas confirming that Mr. Askew had arrived on time, Defendant Habibi nonetheless disciplined Mr. Askew in the form of an oral and written reprimand.

21)     Defendant Habibi disciplined Mr. Askew because of his race and sexual orientation.  This became clear the next day, on or about October 21, 2018, when Defendant Habibi stated, in the presence of Mr. Askew, that "He's [Mr. Askew] too gay for me anyway," openly claiming that he did not like Mr. Askew because of his sexual orientation.  On the same day, Defendant Habibi also stated to Mr. Askew, "You need to go back into the field," a racial reference to the history of African American slavery in the United States.

22)     Prior to this incident, Defendant Habibi had disparaged, harassed, and acted aggressively towards two other African American employees on account of their race and national origin, Officer Marcus Knight ("Ofc. Knight") and Sergeant Vaconia Hatcher ("Sgt. Hatcher"), on or about September 13, 2018.  On or about this date, Defendant Habibi intentionally committed a battery on Ofc. Knight when Defendant Habibi intentionally bumped Ofc. Knight as Defendant Habibi exited the room they were located in.  Both Ofc. Knight and Sgt. Hatcher complained of the mistreatment they received to Defendant MPS, complaining that Defendant Habibi was engaging in national origin discrimination, but Defendant MPS took no action.

23)     On or about October 22, 2018, Mr. Askew filed an internal complaint with Defendant MPS over Defendant Habibi's discriminatory acts towards him on the basis of race and sexual orientation.  The complaint was received by Defendant Blake.

24)     When Mr. Askew filed an internal complaint of discrimination with Defendant MPS, he was opposing the discriminatory treatment he received.  Opposing an act of employment discrimination is a protected activity under Title VII of the Civil Rights Act.  *See* 42 U.S.C. § 2000e-3(a).

25)     Rather than investigate and/or discipline Defendant Habibi for his unlawful and discriminatory behavior towards Mr. Askew, Defendant Blake, also motivated by animus to Mr. Askew's sexual orientation, instead retaliated against Mr. Askew by revealing his complaint to Defendant Habibi.  Defendant Habibi continued this course of retaliation by revealing Mr. Askew's protected activity to Defendant Dunston.

26)     On or abut October 28, 2018, just six days after Mr. Askew filed his internal complaint, Defendants Blake and Dunston, employees and agents for Defendants MPS and

National Harbor respectively, retaliated against Mr. Askew by denying him a promotion to Security Supervisor Lieutenant, despite Mr. Askew being the most qualified applicant for the position.

27)     After October 28, 2018, Defendants Habibi and Dunston conspired to unreasonably alter the conditions of Mr. Askew's employment by dramatically increasing his hours from 40 per week to 60.  On information and belief, Defendants Habibi and Dunston were attempting to cause Mr. Askew to fall asleep on the job in order to have grounds to terminate him.

28)     Defendant Hernandez, who knew of Dunston's retaliatory animus towards Mr. Askew because she served as Defendant Dunston's executive assistant, helped Defendants Dunston and Habibi to assign Mr. Askew unreasonable hours in an effort to assist them in creating a pretext for Mr. Askew's termination.

29)     On or about December 22, 2018, Defendant Habibi became intoxicated and broke into a restricted area of National Harbor.  Mr. Askew discovered Defendant Habibi engaged in this unlawful activity and attempted to follow security protocols.  Defendant Dunston intervened, however, and threatened to terminate Mr. Askew's employment if Mr. Askew filed an incident report or contacted the police in accord with security protocols.

30)     On information and belief, Defendant National Harbor receives federal funds under the Refugee Act for Afghan employees like Defendant Habibi.  Defendant Dunston refused to discipline Defendant Habibi, an Afghan national, but threatened the employment of Mr. Askew, an American national, despite Defendant Habibi engaging in unlawful conduct and Mr. Askew being a more than satisfactory employee.

31)     On or about January 10, 2019, Defendant falsely accused Mr. Askew of falling asleep on the job and maliciously suspended Mr. Askew for three days in another retaliatory act for having engaged in protected activity.

32)     Because of the continuing discriminatory treatment that Mr. Askew was receiving on account of his race, national origin, and sexual orientation, Mr. Askew protested his discriminatory treatment to the local news media.  Protesting discriminatory treatment in employment is a protected activity under Title VII of the Civil Rights Act.

33)     After Mr. Askew engaged in his protected activity before the news media, Defendant Parks, owner of Defendant MPS, was clearly aware that Mr. Askew, his employee, had engaged in protected activity.  Defendant Dunston complained to Defendant Parks about Mr. Askew's engagement in protected activity, and demanded Mr. Parks reassign Mr. Askew.  When Defendant Dunston demanded Defendant Parks reassign Mr. Askew, Defendant Dunston specifically stated he did not want to have a gay security person.

34)     Rather than explaining to Defendant Dunston that Mr. Askew had engaged in protected activity and that Defendant Dunston was demanding unlawful retaliation, Defendant Parks instead acceded to the unlawful request and had Mr. Askew assigned to a less desirable location on account of Mr. Askew's protected activity and sexuality.

35)     Accordingly, on or about May 10, 2019, approximately 5 days after Mr. Askew engaged in this protected activity, Defendants MPS and National Harbor retaliated against Mr. Askew and unreasonably altered the conditions of his employment by reassigning him to a less desirable location, namely the corporate office parking lot of Defendant MPS.  In addition to reassigning Mr. Askew to a less desirable location, Defendant MPS refused to provide Mr. Askew with a key to the restroom on May 26, May 30, and June 6, 2019.  As a result, Mr. Askew

was forced to humiliatingly relieve himself into a jar while seated inside his security vehicle. Defendant Parks was aware of and put into motion all of these occurrences.

36)   On information and belief, no employees of Defendants MPS and National Harbor outside the protected groups of African American and gay were ever made to relieve themselves in a security vehicle rather than an actual bathroom.  Other similarly situated employees of Defendants MPS and National Harbor who were not gay or African American, and who were never forced to urinate into a jar, included but were not limited to:

a)   Cpl. Arabzai (Afghan national);

b)   PFC Roomal (Afghan national);

c)   Lt. Aimal (Afghan national); and

d)   Defendant Habibi (Afghan national).

Additionally, no Afghan national employees were ever forced to urinate into a jar while on the job.  Neither were any of these employees subjected to discrimination or retaliation based on their sex, race, or national origin.

37)   On or about July 20, 2019, due to this continuing course of retaliatory and discriminatory conduct by Defendants, Mr. Askew was forced to resign his position and was thereby constructively terminated for engaging in a protected activity under Title VII of the Civil Rights Act.

38)   Mr. Askew timely filed separate charges of discrimination against Defendants MPS and National Harbor, each on January 17, 2019, with the Equal Employment Opportunity Commission ("EEOC").  On or about May 28, 2021, the EEOC issued Right to Sue notices to Mr. Askew against both Defendants MPS and National Harbor.  This suit is timely filed within 90 days thereof.

## COUNT I – AGAINST DEFENDANTS MPS AND NATIONAL HARBOR
### (42 U.S.C. § 2000e-2(a)(1) - Title VII – National Origin Discrimination)

39)     Every paragraph falling outside this count is incorporated herein by reference.

40)     Plaintiff Mr. Askew is an American national, a member of a protected class with respect to race (Black/African American), and is gay (anti-gay discrimination is an unlawful form of sex discrimination).  Mr. Askew was the only gay employee of Defendant MPS and the only gay employee of Defendant National Harbor's Public Safety Office.

41)     Plaintiff Mr. Askew's job performance was not only satisfactory but he even went above and beyond by mentoring other employees.  Defendants MPS and National Harbor were aware of this because they judged that Mr. Askew successfully completed his 90-day probationary period with a grade of 'Good,' and he was recognized for mentoring junior staff in his 90-day review.

42)     Plaintiff Mr. Askew was subjected to a number of materially adverse employment actions by Defendants MPS and National Harbor, including, but not limited, unjust discipline, denying him a promotion, undesirable reassignments, being forced to use a jar to relieve himself during his shift, and constructive termination of his employment.  All of these actions were adverse because a reasonable employee would find being unjustly disciplined, being denied a promotion, being unfairly reassigned, being forced to relieve themselves in a jar, and being constructively terminated to be materially adverse.

43)     Defendants MPS and National Harbor took these actions against Mr. Askew, by and through their employees and/or agents, on account of Mr. Askew's being, an African American and gay, as made clear by Defendant Habibi's offensive references to all three facets of Mr. Askew's identity (race, national origin, and sexuality) in October 2018.  Employees of Defendants MPS and National Harbor who were not Black, not of American national origin, and

not gay, were only disciplined with cause, were never unfairly reassigned, never denied use of

the bathrooms, and never constructively terminated, including, but not limited to:

> a)      Cpl. Arabzai (Afghan national);
>
> b)      PFC Roomal (Afghan national);
>
> c)      Lt. Aimal (Afghan national); and
>
> d)      Defendant Habibi (Afghan national).

44)      As a direct and proximate result of Defendants MPS and National Harbor's

conduct, by and through their employees and/or agents as described elsewhere herein, Plaintiff

Mr. Askew has been caused damage including, but not limited to, mental and emotional distress

and anguish so severe he had to seek mental health services at an emergency room on three

occasions, and psychological counseling even a year after his retaliatory and discriminatory

constructive termination; stress related weight gain; frequent headaches from stress which still

occur; as well as economic damages, including but not limited to lost wages, suffering

homelessness for 8 months after being constructively terminated, and having to sleep in his car

during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined

at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any

declaratory or injunctive relief to which Plaintiff may be entitled.

### COUNT II – AGAINST DEFENDANTS MPS AND NATIONAL HARBOR
### (42 U.S.C. § 2000e-3(a) – Title VII – Unlawful Retaliation)

45)      Every paragraph falling outside this count is incorporated herein by reference.

46)      Plaintiff Mr. Askew engaged in a protected activity when he filed an internal

discrimination complaint against Defendant Habibi in October 2018 for Defendant Habibi's

offensive references to Mr. Askew's race, national origin, and sex.  Mr. Askew also engaged in a

protected activity when he opposed Defendants MPS and National Harbor's discriminatory practices before the news media in or about May 2019.

47) Within one week of filing his internal complaint of race, national origin, and sex (anti-gay) discrimination against Defendant Habibi, Mr. Askew was unlawfully retaliated against by way of a denial of his promotion to lieutenant, for which he was the most qualified applicant. Within approximately five days of opposing his discriminatory treatment to the news media, Mr. Askew was reassigned to a parking lot where he was also denied bathroom access and forced to use a jar to relieve himself during his shift. The close temporal proximity of these retaliatory events to Mr. Askew's protected activity demonstrates their causal nexus and the employers' discriminatory and retaliatory motivation.

48) After engaging in protected activity, Plaintiff Mr. Askew was subjected to a number of materially adverse employment actions by Defendants MPS and National Harbor, including, but not limited, unjust discipline, denying him a promotion, undesirable reassignments, being forced to use a jar to relieve himself during his shift, and constructive termination of his employment. All of these actions were adverse because a reasonable employee would find being unjustly disciplined, being denied a promotion, being unfairly reassigned, being forced to relieve themselves in a jar, and being constructively terminated to be materially adverse.

49) As a direct and proximate result of Defendants MPS and National Harbor's conduct, by and through their employees and/or agents as described elsewhere herein, Plaintiff Mr. Askew has been caused damage including, but not limited to, mental and emotional distress and anguish so severe he had to seek mental health services at an emergency room on three occasions, and psychological counseling even a year after his retaliatory and discriminatory

constructive termination; stress related weight gain; frequent headaches from stress which still occur; as well as economic damages, including but not limited to lost wages, suffering homelessness for 8 months after being constructively terminated, and having to sleep in his car during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any declaratory or injunctive relief to which Plaintiff may be entitled.

## COUNT III – AGAINST DEFENDANTS MPS AND NATIONAL HARBOR
### (Hostile Work Environment in Violation of Title VII)

50)   Every paragraph falling outside this count is incorporated herein by reference.

51)   On account of his race, sex, and national origin, Plaintiff Mr. Askew was subjected to unwelcome harassing treatment in the form of unjust discipline, the denial of a promotion, undesirable reassignments, being forced to use a jar to relieve himself during his shift, and constructive termination of his employment.  All of these acts constitute forms of harassment which are sufficiently severe to alter the conditions of employment and create an abusive atmosphere, particularly being forced to relieve oneself in a jar rather than a bathroom, despite being stationed in the parking lot of a corporate headquarters.

52)   All of these discriminatory acts are acts a reasonable person would find hostile or abusive, and Mr. Askew did in fact find them hostile and abusive, as evidenced by his reporting to the emergency room on three separate occasions due to the strain his mental health was under from the hostility and abuse.

53)   That Mr. Askew was subjected to this harassment on account of his race, national origin, and sex (anti-gay discrimination), is made clear by the statements of Defendant Habibi, an Afghan national, that "He's [Mr. Askew] too gay for me anyway," a discriminatory reference

to Mr. Askew's sexual orientation displaying animus; as well as the statement by Defendant Habibi that Mr. Askew "need[ed] to go back into the field," a racial reference to the history of African American slavery in the United States.

54)     Defendant Habibi was an employee of Defendants MPS and National Harbor and was Mr. Askew's superior officer, which means that Defendant's Habibi's conduct is attributable to the employer defendants MPS and National Harbor.  Additionally, Mr. Askew complained of the unlawful behavior to Defendants MPS and National Harbor by way of their joint employee Defendant Blake, and Defendants MPS and National Harbor nonetheless took no steps to address the discrimination and instead retaliated against Mr. Askew.

55)     Defendants Blake, Dunston, Hernandez, and Parks all assisted Defendant Habibi in his discriminatory and retaliatory acts against Mr. Askew.  Defendants Blake, Dunston, Hernandez, and Parks were also in supervisory positions relative Mr. Askew and therefore their actions are attributable to Defendants MPS and National Harbor.

56)     As a direct and proximate result of Defendants MPS and National Harbor's conduct, by and through their employees and/or agents as described elsewhere herein, Plaintiff Mr. Askew has been caused damage including, but not limited to, mental and emotional distress and anguish so severe he had to seek mental health services at an emergency room on three occasions, and psychological counseling even a year after his retaliatory and discriminatory constructive termination; stress related weight gain; frequent headaches from stress which still occur; as well as economic damages, including but not limited to lost wages, suffering homelessness for 8 months after being constructively terminated, and having to sleep in his car during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any declaratory or injunctive relief to which Plaintiff may be entitled.

### COUNT IV-AGAINST ALL DEFENDANTS
**(Intentional Infliction of Emotional Distress)**

57)    Every paragraph falling outside this count is incorporated herein by reference.

58)    Defendants all participated in an intentional and discriminatory course of action that a reasonable person would find extreme and outrageous because it falls well outside the bounds of decency.

59)    Defendant Habibi unfairly disciplined Mr. Askew, unfairly denied him a promotion, retaliated against him for engaging in protected activity, unfairly reassigned him, unfairly denied him access to the restroom, and constructively terminated his employment by creating a devastatingly hostile work environment, among other discriminatory acts.  These acts were so outrageous, Mr. Askew had to seek emergency mental health treatment on three separate occasions.  Mistreating someone to the point of having to seek emergency mental health treatment is conduct a reasonable person would find extreme and outrageous.  This conduct was engaged in by Defendant Habibi with reckless disregard and/or indifference as to how it might affect Plaintiff or his employment.

60)    Defendant Blake assisted in this intentionally emotionally distressing course of conduct by making Defendant Habibi aware of Mr. Askew's protected activity and doing nothing about Defendant Habibi's discriminatory conduct, instead allowing Defendant Habibi to retaliate and further discriminate against Mr. Askew.  Defendant Blake's conduct, which contributed to Mr. Askew's emotional distress and mental health emergencies, is conduct a reasonable person

would find extreme and outrageous.  This conduct was engaged in by Defendant Blake with reckless disregard and/or indifference as to how it might affect Plaintiff or his employment.

61)     Defendant Dunston also intentionally inflicted emotional distress on Mr. Askew, when he, along with Defendant Hernandez, assisted Defendant Habibi to place unreasonable hours on Mr. Askew in order to create a pretext to terminate Mr. Askew, among other discriminatory acts.  The conduct of Defendants Dunston and Hernandez is conduct a reasonable person would find extreme and outrageous.  This conduct was engaged in by Defendants Dunston and Hernandez with reckless disregard and/or indifference as to how it might affect Plaintiff or his employment.

62)     Defendant Parks, after learning of Mr. Askew's protected activity, and after receiving Defendant Dunston's unlawful demand that a gay security guard not serve at National Harbor Waterfront, saw to it that Mr. Askew was assigned a less desirable location and subjected to a hostile work environment culminating in Mr. Askew's constructive termination.  The conduct of Defendant Parks is conduct a reasonable person would find extreme and outrageous. This conduct was engaged in by Defendant Parks with reckless disregard and/or indifference as to how it might affect Plaintiff or his employment.

63)     Defendants MPS and National Harbor are liable for the conduct of the individual defendants named and described herein as their joint employers.

64)     As a direct and proximate result of Defendants' conduct, Plaintiff Mr. Askew has been caused damage including, but not limited to, mental and emotional distress and anguish so severe he had to seek mental health services at an emergency room on three occasions, and psychological counseling even a year after his retaliatory and discriminatory constructive termination; stress related weight gain; frequent headaches from stress which still occur; as well

17

as economic damages, including but not limited to lost wages, suffering homelessness for 8 months after being constructively terminated, and having to sleep in his car during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any declaratory or injunctive relief to which Plaintiff may be entitled.

## COUNT V – AGAINST DEFENDANTS MPS AND NATIONAL HARBOR
### (Negligent Hiring, Training, Retention, and Supervision)

65) Every paragraph falling outside this count is incorporated herein by reference.

66) Defendants MPS and National Harbor were the joint employers of Defendants Blake, Dunston, Habibi, and Hernandez, and hired, trained, retained, and supervised all of them. In so doing, they had a duty to exercise reasonable care to ensure those defendant employees were competent.

67) Defendants Blake, Dunston, Habibi, Hernandez, and Parks demonstrated incompetence as supervisors when they unlawfully retaliated against Mr. Askew after Mr. Askew engaged in activity protected under federal law.

68) Defendants MPS and National Harbor were actually and constructively notified both when Mr. Askew filed his internal discrimination complaint against Defendant Habibi in October 2018, and also when Mr. Askew publicly opposed his discrimination in the news media in approximately May 2019.

69) Despite this notice that four of its employees were engaged in employment behavior which violated federal law, Defendants MPS and National Harbor took no steps to correct, discipline, or terminate Defendants Blake, Dunston, Habibi, Hernandez, and Parks.  In so doing, Defendants MPS and National Harbor breached their duty of reasonable care to hire and

18

retain only competent employees, since competent employees do not violate federal law through intentional discrimination.

70)      As a direct and proximate result of Defendants MPS and National Harbor's negligent breach of duty, Defendants Blake, Dunston, Habibi, Hernandez, and Parks engaged in a discriminatory and retaliatory course of conduct that included, but was not limited to, unjust discipline, denying Mr. Askew a promotion, undesirable reassignments, forcing Mr. Askew to use a jar to relieve himself during his shift, and constructive termination of Mr. Askew's employment.

71)      As a direct and proximate result of Defendants MPS and National Harbor's conduct, Plaintiff Mr. Askew has been caused damage including, but not limited to, mental and emotional distress and anguish so severe he had to seek mental health services at an emergency room on three occasions, and psychological counseling even a year after his retaliatory and discriminatory constructive termination; stress related weight gain; frequent headaches from stress which still occur; as well as economic damages, including but not limited to lost wages, suffering homelessness for 8 months after being constructively terminated, and having to sleep in his car during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any declaratory or injunctive relief to which Plaintiff may be entitled.

### COUNT VI – AGAINST ALL DEFENDANTS
**(And/or in the Alternative Negligence or Gross Negligence)**

72)      Every paragraph falling outside this count is incorporated herein by reference.

73)      The individual defendants all possessed a duty of reasonable care toward Plaintiff Mr. Askew, including conducting themselves lawfully.

74)     Defendants Blake, Dunston, Habibi, Hernandez, and Parks all breached this duty when they engaged in a discriminatory and retaliatory course of conduct against Mr. Askew on the basis of Mr. Askew's race, national origin, and sex, and in retaliation for Mr. Askew engaging in protected activity.  And/or in the alternative Defendants Blake, Dunston, Habibi, Hernandez, and Parks breached their duty of reasonable care and grossly negligently engaged in a discriminatory and retaliatory course of conduct against Mr. Askew on the basis of Mr. Askew's race, national origin, and sex, and in retaliation for Mr. Askew engaging in protected activity.  Defendants Blake, Dunston, Habibi, Hernandez, and Parks engaged in this conduct with negligent and/or in the alternative reckless disregard and/or indifference as to how it might affect Plaintiff Mr. Askew or his employment.

75)     Defendants MPS and National Harbor are jointly and severally liable for the conduct of the individual defendants described elsewhere herein on the basis of *respondeat superior*.

76)     As a direct and proximate result of Defendants' conduct, Plaintiff Mr. Askew has been caused damage including, but not limited to, mental and emotional distress and anguish so severe he had to seek mental health services at an emergency room on three occasions, and psychological counseling even a year after his retaliatory and discriminatory constructive termination; stress related weight gain; frequent headaches from stress which still occur; as well as economic damages, including but not limited to lost wages, suffering homelessness for 8 months after being constructively terminated, and having to sleep in his car during this time as a result.

Wherefore Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, as well as any declaratory or injunctive relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.  All the allegations pleaded herein, however worded, are pleaded alternatively as acts of negligence, gross negligence, intent, malice, willfulness and/or wantonness, as determined at trial by the jury in this matter.

Respectfully submitted,

Tucker Moore Group, LLP

/s/ *Charles Tucker Jr.*
Charles Tucker, Jr. (Bar No.: 19045)
charles@tuckerlawgroupllp.com
8181 Professional Place, Suite 207
Hyattsville, MD 20785
T: (301) 577-1175
F: (240) 467-5787
charles@tuckerlawgroupllp.com
*Counsel for Plaintiff*